**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

**CIVIL ACTION No. 1:18-cv-186 (WOB)**

**THE DEVINE GROUP, INC.**                                              **PLAINTIFF**


**VS.**                        **MEMORANDUM OPINION AND ORDER**


**OMNI HOTELS CORPORATION**                                      **DEFENDANT**


This is a run-of-the-mill contract dispute. Defendant Omni Hotels and Plaintiff, The Devine Group, entered into a written agreement. Defendant terminated the contract without cause because it believed it had that right under the terms of the contract. Plaintiff claimed the parties agreed to a longer engagement and filed this lawsuit, asserting three counts: (1) declaratory judgment; (2) anticipatory repudiation; and (3) breach of contract.

On September 20, 2018, this Court heard oral argument on Defendant's first motion to dismiss (Doc. 5) and the parties' cross-motions for judgment on the pleadings (Docs. 10, 19). (Doc. 20). These motions were denied without prejudice, and the Court granted Plaintiff 90 days "to produce to [D]efendant any evidence to support [P]laintiff's interpretation of the contract," and 60 days thereafter to conduct any depositions. *Id.* Plaintiff produced thirty pages of e-mail communications that preceded the formation of the Contract. With a few exceptions, these e-mails are primarily between Plaintiff's own personnel. (Doc. 25-3). The parties, however, did not conduct any depositions.

This matter is now before the Court on the following motions: (1) Defendant's motion for judgment on the pleadings or, in the alternative, motion for summary judgment (Doc. 24);[1] (2) Defendant's renewed motion to dismiss Count I (Doc. 26);[2] and (3) Plaintiff's motion for summary judgment (Doc. 25). The Court dispenses with oral argument at this stage because the materials before it adequately present the facts and legal contentions. Accordingly, the matter is ripe for disposition.

As set forth below, the parties' contract unambiguously permitted Defendant to terminate the contract when it did, and therefore the Court will grant Defendant's motion for judgment on the pleadings.

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts giving rise to this controversy are undisputed. Plaintiff, The Devine Group, Inc. ("Devine"), provides businesses with employee and talent assessment services. (Doc. 1, ¶ 12). Defendant, Omni Hotels Corporation ("Omni"), operates hotels throughout the United States, Canada, and Mexico. *Id.* at ¶ 13. On May 4, 2016, the parties executed the Enterprise People Analytics Solutions contract (the "Contract"). *Id.* at 22; *see id.* at ¶ 14. The Contract was drafted by Devine. *See id.*

---

[1] Defendant supports its motion, in part, by incorporating its arguments in prior filings (Docs. 14, 19). (Doc. 24 at 11).

[2] Defendant also relies on previous filings (Docs. 5-1, 11) to support its renewed motion to dismiss Count I. (Doc. 26 at 1). In opposition to Defendant's renewed motion to dismiss, Plaintiff has renewed and incorporated its previously stated position as set forth in (Doc. 9). (Doc. 27 at 11).

*The Devine Grp., Inc. v. Omni Hotels Corp.*

at 17.

Pursuant to the Contract, Devine agreed to provide its professional services to Omni. (Doc. 1 at 18). Omni, in turn, agreed to pay a monthly fee in accordance with Section III of the Contract as follows:

### III. ENTERPRISE MONTHLY FEE

| NUMBER OF EMPLOYEES | APROXIMATELY 3,000 | |
|---|---|---|
| Term | May 1, 2016 to December 31, 2016 | January 1, 2017 to December 31, 2019 |
| Monthly | $3,888 | $6,875 |

*Id.* at 19.[3] The agreed duration of the Contract is set forth in Section V, which is the center of this dispute. That provision, under the heading "TERM," states:

> The Term of this Enterprise License is equal to the Terms in Section III above. At the end of the first term, ending December 31st, 2016, Omni will have the option to terminate the agreement. Notice must be provided in writing no later than December 31st, 2016. There will be additional annual renewals thereafter unless canceled by either party with 60 days prior written notice.

*Id.*

It is uncontested that Omni *did not* exercise its option to terminate the Contract on December 31, 2016. (Doc. 1, ¶ 21); (Doc. 3, ¶ 21). Hence, Devine continued

---

[3] *See also* (Doc. 25-2 at 4).

*The Devine Grp., Inc. v. Omni Hotels Corp.*

to provide its services and, for the next year, Omni paid the increased monthly fee of $6,875. *See* (Doc. 1, ¶¶ 19–24). Then, on October 26, 2017, Devine received a "Termination Letter" from Omni, for the stated purpose of "initiating the termination of [the] contract" and "providing the required 60 day written notice to terminate the agreement and discontinue service effective December 31, 2017." (Doc. 1 at 25).[4]

At that time, Devine claims it responded to Omni that the Contract Term ran through December 31, 2019, and that the Termination Letter did not terminate the Contract. *Id.* at ¶ 23. Omni, however, allegedly responded that it was "firm in [its] resolve" and "well within the terms of the [C]ontract to end the agreement" when it did. *Id.* at ¶ 26. When Omni then refused to pay Devine's January 2018 invoice, Devine filed suit in state court on February 26, 2018. *Id.* at ¶ 25; *see id.* at 5.[5] Omni timely removed the case to this Court. *Id.* at 1.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of*

---

[4] The Termination Letter contains a purported error because it states that it is "effective December 31, **3017**." (Doc. 1 at 25). But Devine has not challenged the validity of Omni's termination based upon this apparent scrivener's error.

[5] Devine alleges it also sent Omni an invoice for February 2018. (Doc. 1, ¶ 25).

*The Devine Grp., Inc. v. Omni Hotels Corp.*

*Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment" as a matter of law. *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012) (citation and internal quotation marks omitted).

When evaluating a Rule 12(c) motion, a court may consider: (1) "documents attached to the pleadings"; (2) documents "referred to in the pleadings" that "[are] integral to the claims"; and (3) "matters of public record"—and may do so "without converting the motion to one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); *see also Brent v. Wayne Cty. Dep't of Human Servs.,* 901 F.3d 656, 695 (6th Cir. 2018) (explaining that if a party has "attached exhibits to their motion for judgment on the pleadings, [a court] may consider those exhibits so long as they are referred to in the Complaint and are central to the claims contained therein." (citation and internal quotation marks omitted)); *Henry v. Chesapeake Appalachia, LLC*, 739 F.3d 909, 912 (6th Cir. 2014); Fed. R. Civ. P. 10(c).

If materials other than those listed above "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule

*The Devine Grp., Inc. v. Omni Hotels Corp.*

56." *See, e.g.*, Fed. R. Civ. P. 12(d); *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006). Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).

"The summary judgment standard does not change simply because the parties presented cross-motions." *Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 311 (6th Cir. 2010). "[R]ather, a court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citations and internal quotation marks omitted).

## ANALYSIS

### I. Breach of Contract (Count III)

The Court will first address Devine's breach of contract claim because it is at the heart of Devine's Complaint and necessarily encompasses the other two claims for declaratory judgment and anticipatory repudiation.

#### A. Applicable Law

The Contract contains a choice-of-law clause that explicitly provides that the

*The Devine Grp., Inc. v. Omni Hotels Corp.*

terms shall be construed according to Ohio law. (Doc. 1 at 21).[6] The law of Ohio

therefore governs this dispute.

The required elements for a breach of contract claim under Ohio law are: "(1)

the existence of a contract; (2) performance by the plaintiff; (3) breach by the

defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V&M Star*

*Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012); *Jarupan v. Hanna*, 878

N.E.2d 66, 73 (Ohio Ct. App. 2007). Only the "breach" element is implicated by the

parties' dispositive cross-motions. But the issue here is not whether Omni sent the

Termination Letter and refused to make any further payments. Instead, the question

is whether Omni had the right to terminate the Contract when it did.

## B.  Principles of Contract Interpretation

The "interpretation of written contract terms, including the determination of

whether those terms are ambiguous, is a matter of law for initial determination by

the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (applying

Ohio law).[7] "When confronted with an issue of contract interpretation, [the court's]

---

[6] "When interpreting contracts in a diversity action," courts "generally enforce the parties' contractual choice of governing law." *See, e.g., Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596 (1991)); *see also Tele-Save Merchandising Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987) ("Ohio choice-of-law principles strongly favor upholding the chosen law of the contracting parties.").

[7] The Sixth Circuit caselaw cited herein is based on Ohio law unless otherwise noted.

role is to give effect to the intent of the parties." *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011). "[T]hat intent is presumed to reside in the language [the parties] chose to employ in the agreement." *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d 910, 915 (Ohio 2004); *Sunoco, Inc.* 953 N.E.2d at 292. "Where a contract is found to be integrated, courts consider the language of the contract alone to define the obligations by which the parties intended to be bound." *Dottore v. Huntington Nat'l Bank*, 480 F. App'x 351, 352 (6th Cir. 2012) (citing *Bellman v. Am. Int'l Grp.*, 865 N.E.2d 853, 856–57 (Ohio 2007)).

"[T]he meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." *Savedoff*, 524 F.3d at 763 (quoting *Burris v. Grange Mut. Co.*, 545 N.E.2d 83, 88 (Ohio 1989)). This includes "writings executed as part of the same transaction." *Textileather Corp. v. GenCorp Inc.*, 697 F.3d 378, 382 (6th Cir. 2012) (citation and internal quotations omitted). "Common, undefined words appearing in a contract will be given their ordinary meaning . . ." *Sunoco, Inc.*, 953 N.E.2d at 292. But courts do not give words their ordinary meaning if "manifest absurdity results," *id.*, or "some other meaning is clearly evidenced from the face or overall contents of the agreement." *Lockheed Martin Corp. v. Goodyear Tire & Rubber Co.*, 529 F. App'x 700, 703 (6th Cir. 2013) (quoting *Sunoco, Inc.*, 953 N.E.2d at 293).

"Only if the contract is ambiguous will courts look to facts outside the four

*The Devine Grp., Inc. v. Omni Hotels Corp.*

corners of the contract to determine intent." *Yellowbook, Inc. v. Brandeberry*, 708 F.3d 837, 844 (6th Cir. 2013). Otherwise, courts "must apply the plain language of the contract." *Textileather Corp.*, 697 F.3d at 382 (quoting *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997)); *City of St. Marys v. Auglaize Cty. Bd. of Comm'rs*, 875 N.E.2d 561, 566 (Ohio 2007) ("Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract."). "If a contract, or, term in a contract . . . is ambiguous" then "extrinsic evidence of reasonableness or intent can be employed." *Cal. Fitness I, Inc. v. Lifestyle Family Fitness, Inc.*, 433 F. App'x 329, 337 (6th Cir. 2011) (citation and internal quotation marks omitted). This so-called "parol evidence," however, "is admissible to interpret, but not to contradict, the express language of the contract." *United States v. Ohio*, 787 F.3d 350, 354 (6th Cir. 2015) (citation and internal quotation marks omitted).

"Contractual language is ambiguous only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Savedoff*, 524 F.3d at 763 (citation and internal quotation marks omitted); *Eastham v. Chesapeake Appalachia, LLC*, 754 F.3d 356, 361 (6th Cir. 2014). "**[C]ourts may not use extrinsic evidence to create an ambiguity**; rather, the ambiguity must be patent, i.e., apparent on the face of the contract." *Savedoff*, 524 F.3d at 763 (emphasis added) (quoting *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio Ct. App. 2003)).

*The Devine Grp., Inc. v. Omni Hotels Corp.*

On the other hand, "**a contract is unambiguous** if it can be given a definite

*legal meaning.*'" *LM Ins. Corp. v. Criss*, 716 F. App'x 530, 534 (6th Cir. 2017)

(emphasis added) (quoting *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio

2003)). "A contractual term is not ambiguous merely because"—as in this case—"two

parties offer substantially different interpretations." *Coma Ins. Agency v. Safeco Ins.

Co.*, 526 F. App'x 465, 468 (6th Cir. 2013) (citation and internal quotation marks

omitted). In the same vein, "[t]he fact that a contract . . . is silent on a particular point

does not make it ambiguous." *Savedoff*, 524 F.3d at 764 (quoting *Statler Arms v.

Apoca, Inc.*, 700 N.E.2d 415, 421 (Ohio Ct. App. 1997)).

"If a contract is clear and unambiguous . . . there is no issue of fact to be

determined," *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 684

(6th Cir. 2000) (quoting *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio*,

474 N.E.2d 271, 272–73 (Ohio 1984)),[8] and "a court may look no further than the

writing itself to find the intent of the parties." *Sunoco, Inc.*, 953 N.E.2d at 292.

## C.    Omni's Right to Terminate the Contract

Devine's breach of contract claim turns on the extent of Omni's termination

rights under the Contract. Devine contends the Contract Term is three years and

---

[8] "[I]f a term cannot be determined from the four corners of a contract, factual
determination of intent or reasonableness may be necessary to supply the missing
term." *Bank One, N.A. v. Echo Acceptance Corp.*, 380 F. App'x 513, 521 (6th Cir.
2010) (quoting *Inland Refuse Transfer Co.*, 474 N.E.2d at 272–73).

*The Devine Grp., Inc. v. Omni Hotels Corp.*

eight months, beginning when the Contract was executed and running "through December 31, 2019, with annual renewals following the end of that Term." Devine argues that during that three-year and eight-month Term, Omni only had "a single opt-out option" or "early termination right," which required Omni to provide written notice of termination no later than December 31, 2016 (approximately eight months from when the Contract was executed). (Doc. 27 at 1, 7; Doc. 25 at 2, 8–10); (Doc. 1, ¶ 20). Omni also reads the Contract as establishing a three-year and eight-month Term. But Omni maintains that "there are three annual renewal periods within the [T]erm." (Doc. 24 at 15–16).

As a preliminary matter, the Contract before the Court is a fully integrated agreement between the parties. (Doc. 1 at 19, § VIII) (stating that the Contract "is the entire agreement between The Divine Group and [Omni]"). Thus, in accordance with the above principles of contract interpretation, the starting point is the language in Sections III and V governing the Term of the Contract. *See Dottore*, 480 F. App'x at 352. If, and only if, those provisions are ambiguous by virtue of being "susceptible of two or more reasonable interpretations" may extrinsic evidence be considered to determine the intent of the parties. *Savedoff*, 524 F.3d at 763.

The Court therefore will exclude the e-mails produced by Devine (Doc. 25-3); the letter from Devine's counsel (Doc. 24-2); the declaration of Devine's Chief Operating Officer, Erik Lutz (Doc. 25-1); and the affidavit of Omni's Vice President of Talent Acquisition & Development, Jon Hunter (Doc. 28-1). As a result, the Court

*The Devine Grp., Inc. v. Omni Hotels Corp.*

will view Omni's motion (Doc. 24), as one under Rule 12(c). *Northville Downs v. Granholm*, 622 F.3d 579, 585 (6th Cir. 2010).

Turning then to the language of the Contract, in Section III the following table is set forth:

**III. ENTERPRISE MONTHLY FEE**

| NUMBER OF EMPLOYEES | APROXIMATELY 3,000 | |
|---|---|---|
| Term | May 1, 2016 to December 31, 2016 | January 1, 2017 to December 31, 2019 |
| Monthly | $3,888 | $6,875 |

(Doc. 1 at 19). Section V, under the heading "TERM," states:

> [1] The Term of this Enterprise License is equal to the Terms in Section III above. [2] At the end of the first term, ending December 31st, 2016, Omni will have the option to terminate the agreement. [3] Notice must be provided in writing no later than December 31st, 2016. [4] There will be additional annual renewals thereafter unless canceled by either party with 60 days prior written notice.

*Id.*[9] Beginning with the first sentence, the Term of the Contract must be "equal" to the time period established by the "Terms" in Section III. Thus, the Term of the Contract is three (3) years and eight (8) months.

The second sentence unambiguously permits Omni to terminate the Contract on December 31, 2016. And as to the third sentence, that provision simply prescribes

---

[9] The four sentences are labeled to avoid confusion.

*The Devine Grp., Inc. v. Omni Hotels Corp.*

the means by which Omni was required to exercise its termination right; namely, by providing notice "in writing no later than December 31, 2016." The parties agree Omni had this termination right and did not exercise it. (Doc. 1, ¶ 21); (Doc. 3, ¶ 21).

That leaves the fourth sentence: "There will be **additional annual renewals thereafter** unless canceled by either party with 60 days prior written notice." (emphasis added). This sentence is the source of the tension between the parties. But that sentence yields only one reasonable interpretation: The adverb "thereafter" plainly refers to December 31, 2016.[10] The meaning is unambiguous, *Savedoff*, 524 F.3d at 763, and thus the Court will not, and indeed cannot, consider Devine's extrinsic evidence. *Yellowbook, Inc.*, 708 F.3d at 844.

The Court therefore holds that Section V clearly and unambiguously dictates that *after December 31, 2016*, the Contract would renew once every year, for a period of one year, but either party was free to "cancel" the renewal by terminating the Contract with written notice 60 days prior to the renewal date. When applied to facts of this case, the operative date here is 60 days prior to December 31, 2017. Thus, Omni's Termination Letter, dated October 26, 2017, was a timely notice that terminated the Contract. (Doc. 1 at 25).[11] Omni therefore did not breach the Contract.

---

[10] The word "thereafter" means "After that in time, order, or sequence; subsequently; afterwards." *Thereafter*, OXFORD ENGLISH DICTIONARY, OED (Oxford Univ. Press 2019), https://www.oed.com/view/Entry/200475?redirectedFrom=thereafter#eid (last visited May 16, 2019) [hereinafter "OXFORD ENGLISH DICTIONARY"].

[11] Determining whether a communication has effectively terminated a contractual

This result is unavoidable. Once the terms "additional,"[12] "annual,"[13] "renewal,"[14] and "thereafter,"[15] are each given their "ordinary meaning,"[16] it cannot be said that the result the Court reaches today is "manifest absurdity" or that "some other meaning is *clearly evidenced* from the face or overall contents of the agreement." *Sunoco, Inc.*, 953 N.E.2d at 293–93 (emphasis added) (citation and internal quotation marks omitted). But in order to find that Devine's interpretation is reasonable (Doc. 25 at 9–10; Doc. 27 at 5–7), one must essentially ignore the fourth sentence in its

---

relationship is a question of law. *See, e.g.*, *Stonehenge Land Co. v. Beazer Homes Invs., LLC*, 893 N.E.2d 855, 863 (Ohio Ct. App. 2008); *Gollihue v. Nat'l City Bank*, 969 N.E.2d 1233, 1238 (Ohio Ct. App. 2011); *Daniel E. Terreri & Sons v. Bd. of Mahoning Cty. Comm'rs*, 786 N.E.2d 921, 932 (Ohio Ct. App. 2003).

[12] The word "additional" means "something else; added; extra, supplementary" or "[a] thing which is added to something else" as in "addition, an extra." *Additional*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/view/Entry/2188?redirected From=additional#eid (last visited May 16, 2019).

[13] The term "annual" means "[o]ccurring once every year; . . . [or] relating to, or involving a period of one year." *Annual*, BLACK'S LAW DICTIONARY (10th ed. 2014), *available* at Westlaw.

[14] A "renewal" is defined as "[t]he action of renewing or re-establishing something"; for example, "the action of extending the period of validity of a lease, licence, etc." *Renewal*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/view/Entry/162428? redirectedFrom=renewal#eid (last visited May 16, 2019).

[15] *Thereafter*, OXFORD ENGLISH DICTIONARY, *supra* note 10.

[16] "The Ohio Supreme Court has consistently used dictionary definitions to determine the common meaning of a word." *Eclipse Res. - Ohio, LLC v. Madzia*, 717 F. App'x 586, 594 (6th Cir. 2017) (citing *Campus Bus. Serv. v. Zaino*, 786 N.E.2d 889, 891 (Ohio 2003)).

*The Devine Grp., Inc. v. Omni Hotels Corp.*

entirety. The Court will not do that. *Savedoff*, 524 F.3d at 763 ("[N]o provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible.").[17]

"[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015) (citation and internal quotation marks omitted). Such is the case here. Accordingly, the Court will grant Omni judgment on the pleadings.

## II.     Anticipatory Repudiation (Count II)

To state a claim for anticipatory breach of contract, a plaintiff must establish that there was (1) "a contract containing some duty of performance not yet due"; (2) "by word or deed, the defendant refused future performance"; and (3) the defendant caused "damage to the plaintiff." *Metz v. Am. Elec. Power Co.*, 877 N.E.2d 316, 324 (Ohio Ct. App. 2007). As a matter of law, Devine cannot establish the first element.

---

[17] In ruling in favor of Omni, the Court emphasizes that it has not construed the Contract against Devine (the drafter). This would be inappropriate as this so-called "'*contra proferentem*' canon is meant primarily for cases where the written contract is standardized and between parties of unequal bargaining power." *Yellowbook, Inc.*, 708 F.3d at 847 (citation and internal quotation marks omitted). Moreover, "[c]onstruing a contract against the drafter is a secondary rule of contract construction, and is applicable when the primary rules of contract construction, i.e. plain language of the document and extrinsic evidence, in that order, fail to clarify the meaning of the contract." *Cadle v. D'Amico*, 66 N.E.3d 1184, 1189 (Ohio Ct. App. 2016); *LublinSussman Grp. LLP v. Lee*, 107 N.E.3d 724, 729 (Ohio Ct. App. 2018). Here, the Court has merely given the plain language of the Contract its ordinary meaning in order "to give effect to the intent of the parties." *Sunoco, Inc.*, 953 N.E.2d at 292.

*The Devine Grp., Inc. v. Omni Hotels Corp.*

The same reasoning in Count I applies to Count II. As explained above, Omni properly terminated the Contract. Because this was permissible under the terms of the Contract, it follows that there was not "a contract containing some duty of performance not yet due."

Accordingly, Count II must be dismissed with prejudice.

## III.    Omni's Renewed Motion to Dismiss Count I (Declaratory Judgment)

The parties dispute whether this Court can entertain Count I pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. "District courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Courts in this jurisdiction consider the following five factors in exercising their discretion:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 813 (6th Cir. 2004) (citations omitted); *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

*The Devine Grp., Inc. v. Omni Hotels Corp.*

The parties agree that the third and fourth factors are not applicable. (Doc. 5-1 at 8

n.3; Doc. 9 at 3).[18]

Applying the remaining three factors, the Court will decline to hear Devine's

claim for declaratory judgment. There is no need to belabor the application of these

factors because numerous courts have reached the same result when the declaratory

judgment claim was brought alongside a breach of contract claim.[19]

---

[18] When the Sixth Circuit has applied the five-factor test, the case typically has involved a claimant that was seeking an advance opinion on the rights of the parties (often insurance coverage or indemnity) based on some other underlying action yet to be decided (often a personal injury claim) that *potentially* might give rise to rights and liabilities. *See, e.g., Bituminous*, 373 F.3d at 812–13 (plaintiff was seeking "a declaration that [plaintiff] has no duty to defend or indemnify" and the court held "the district court should have declined to exercise jurisdiction"); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (concluding "district court did not abuse its discretion in exercising jurisdiction pursuant to the Declaratory Judgment Act" in an action to determine whether the insurer had a "contractual obligation to extend tort liability insurance coverage to [the insured] for his sexual affair with [a plaintiff]" who had a lawsuit pending in a state court); *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000) (plaintiff was seeking "a ruling on the applicable policy limits for its pending state court tort action"); *Western World Ins. Co.*, 773 F.3d at 758 (affirming district court's decision to assume jurisdiction in an action where all parties sought a declaratory judgment regarding whether the insurer "had a duty to defend . . . and indemnify" if the underlying claimant "won her negligence suit."); *Grand T. W. R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (plaintiff sought "a judgment that overturns" an "earlier order regarding [plaintiff]'s indemnity claim" and that would affect a "pending Illinois lawsuit").

[19] *See, e.g., Jack v. Grouse*, No. 2:16-cv-633, 2017 WL 958621 at *1 (S.D. Ohio Mar. 13, 2017); *Miami Valley Mobile Health Servs. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012); *Superior Care Pharmacy v. Medicine Shoppe Int'l, Inc.*, No. 2:10-cv-207, 2011 WL 597065 at *15 (S.D. Ohio Feb. 10, 2017); *World Shipping, Inc.*, No. 1:12-CV-3036, 2013 WL 774503, at *5 (N.D. Ohio Feb. 22, 2013); *Stuckey v. Online Res. Corp.*, No. 2:08-cv-1188, 2009 WL 5030794, at *19–20 (S.D.

*The Devine Grp., Inc. v. Omni Hotels Corp.*

The common thread in these cases is that everything the plaintiffs hoped to obtain in their declaratory judgment claims could be obtained in their substantive claims for relief. And this is true whether the plaintiff might prevail or not on their substantive claims. *See Superior Care Pharmacy*, 2011 WL 597065 at *15.

Indeed, here Devine seeks a declaratory judgment as to the following issues:

a. The Term of the Contract runs through December 31, 2019;

b. Omni does not have the right to terminate the Contract until the end of the Term;

c. Omni's October 26, 2017 letter did not terminate the Contract [as of] December 31, 2017;

d. Omni has outstanding obligations to Devine Group pursuant to the Contract, which it must fulfill through the remainder of the Term; and

e. Devine Group has performed all of its obligations to date under the Contract.

(Doc. 1, ¶ 29). The first three points are directly covered by the above breach of contract analysis. The fourth point is a nonstarter because even if Omni was in breach, specific performance is inappropriate where money damages will make a claimant whole. *See Billy Williams Builders and Developers Inc. v. Hillerich*, 446 S.W.2d 280 (Ky. 1969). Finally, the Court sees no reason to issue a declaratory judgment on the last point where the contractual relationship between the parties

_____

Ohio Dec. 11, 2009).

*The Devine Grp., Inc. v. Omni Hotels Corp.*

has ended.

In short, a "declaratory judgment generally is sought before a completed injury-in-fact has occurred." *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998) (citing *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). But here, although premised on a flawed interpretation of the Contract, the alleged injury-in-fact has already occurred.

Accordingly, the Court will dismiss Count I with prejudice.

## IV. CONCLUSION

Consistent with the accompanying Memorandum Opinion, it is hereby **ORDERED** that:

(1) Defendant's motion for judgment on the pleadings (Doc. 24), is **GRANTED**;

(2) Defendant's renewed motion to dismiss Count I (Doc. 26), is **GRANTED**;

(3) Plaintiff's motion for summary judgment (Doc. 25), is **DENIED**;

(4) All claims in the Complaint (Doc. 1), are **DISMISSED WITH PREJUDICE**.

A separate judgment shall enter concurrently herewith.

This 3rd day of July 2019.



Signed By:

*William O. Bertelsman*

**United States District Judge**

*The Devine Grp., Inc. v. Omni Hotels Corp.*